# IN THE SUPREME COURT OF TEXAS

═══════════
No. 12-0739
═══════════

AMERICO LIFE, INC., AMERICO FINANCIAL LIFE AND ANNUITY
INSURANCE COMPANY, GREAT SOUTHERN LIFE INSURANCE COMPANY,
THE OHIO STATE LIFE INSURANCE COMPANY, AND NATIONAL
FARMERS UNION LIFE INSURANCE COMPANY,
PETITIONERS,

v.

ROBERT L. MYER AND STRIDER MARKETING GROUP, INC.,
RESPONDENTS

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

**Argued November 6, 2013**

JUSTICE BROWN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN and JUSTICE DEVINE joined.

JUSTICE JOHNSON filed a dissenting opinion, in which JUSTICE WILLETT, JUSTICE LEHRMANN and JUSTICE BOYD joined.

This is an arbitration case. The petitioners contend the court of appeals erroneously imposed a requirement for the selection of arbitrators beyond those the parties agreed upon in their arbitration agreement. For the reasons explained below, we reverse.

# I

In 1998, Robert Myer and Strider Marketing Group, Inc. (collectively Myer) sold a collection of insurance companies to the petitioners (collectively Americo). The parties agreed on an up-front payment to Myer for the businesses and executed a "trailer agreement" to provide for additional payments based on the businesses' future performance. The trailer agreement included an arbitration clause with six paragraphs of terms agreed upon by the parties, including:

> 3.3 Arbitration. In the event of any dispute arising after the date of this Agreement among the parties hereto with reference to any transaction contemplated by this Agreement the same shall be referred to three arbitrators. Americo shall appoint one arbitrator and Myer shall appoint one arbitrator and such two arbitrators to select the third . . . . Each arbitrator shall be a knowledgeable, independent businessperson or professional.
> . . .
> The arbitration proceedings shall be conducted in accordance with the commercial arbitration rules of the American Arbitration Association, except that Americo and Myer each shall be entitled to take discovery as provided under Federal Rules of Civil Procedure Nos. 28 through 36 during a period of 90 days after the final arbitrator is appointed and the arbitrators shall have the power to issue subpoenas, compel discovery, award sanctions and grant injunctive relief. The arbitrators shall be entitled to retain a lawyer to advise them as to legal matters, but such lawyer shall have none of the relationships to Americo or Myer (or any of their Affiliates) that are proscribed above for arbitrators.

The agreement combines terms expressly chosen by the parties with the incorporation by reference of American Arbitration Association rules to govern the arbitration proceeding. When the parties executed their agreement, AAA rules did not require arbitrator-impartiality, but by the time Americo invoked arbitration in 2005 after disputes arose concerning the additional payments to Myer, the AAA rules by default required that "[a]ny arbitrator shall be impartial and independent . . . and shall

2

be subject to disqualification for . . . partiality or lack of independence . . . ." AAA Commercial Arbitration Rules R-17(a)(I) (2003).

Myer alleged that Americo's first-choice arbitrator, Ernest Figari, Jr., was partial toward Americo, and successfully moved the AAA to disqualify him. Americo objected to Figari's disqualification but named another arbitrator, about whom Myer likewise complained, and whom the AAA likewise struck. Myer did not object to Americo's third appointee, who ultimately served on the panel. The arbitration proceeding resulted in a unanimous award in Myer's favor amounting to just over $26 million in payments due, breach-of-contract damages, and attorneys' fees.

When Myer moved to confirm the award in the trial court, Americo renewed its objection to Figari's disqualification. Americo argued that in disqualifying Figari for partiality, the AAA failed to follow the arbitrator-selection process specified in the parties' agreement, which provided only that "each arbitrator shall be a knowledgeable, independent businessperson or professional." The trial court determined the arbitration agreement was ambiguous but ultimately agreed with Americo's reading and vacated the award. Myer appealed, and the court of appeals reversed on the ground that Americo had waived its objection to Figari's removal. We reversed that decision. *Americo Life, Inc. v. Myer*, 356 S.W.3d 496 (Tex. 2011) (per curiam). On remand, the court of appeals again reversed, this time on the merits, holding the arbitration agreement was unambiguous and the arbitration panel was properly appointed under both the terms of the agreement and the AAA rules. Nearly ten years after arbitration proceedings commenced between the parties, their case again comes before this Court.

**II**

Arbitrators derive their power from the parties' agreement to submit to arbitration. *City of Pasadena v. Smith*, 292 S.W.3d 14, 20 (Tex. 2009). They have no independent source of jurisdiction apart from the parties' consent. *I.S. Joseph Co. v. Mich. Sugar Co.*, 803 F.2d 396, 399 (8th Cir. 1986)*.* Accordingly, arbitrators must be selected pursuant to the method specified in the parties' agreement. *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672–73 (5th Cir. 2002). An arbitration panel selected contrary to the contract-specified method lacks jurisdiction over the dispute. Accordingly, courts "do not hesitate to vacate an award when an arbitrator is not selected according to the contract-specified method." *Bulko v. Morgan Stanley DW, Inc.*, 450 F.3d 622, 625 (5th Cir. 2006). So we look to the arbitration agreement to determine what the parties specified concerning the arbitrator-selection process.

A written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the limitations of the parol-evidence rule. *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011). Facts and circumstances that may be considered include the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the parties' transaction. *See id.* (citing 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 32.7 (4th ed. 1999)). When interpreting an integrated writing, the parol-evidence rule precludes considering evidence that would render a contract ambiguous when the document, on its face, is capable of a definite legal meaning. *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731–32 (Tex. 1981). The rule does not, however, prohibit considering surrounding facts

and circumstances that inform the contract text and render it capable of only one meaning. *See id.*; *Wellington*, 352 S.W.3d at 469.

## III

### A

To determine the parties' intent, we examine the express language of their agreement. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). In their agreement, the parties directly addressed the issue of arbitrator qualifications and agreed on a short list of requirements, namely that each arbitrator must be a "knowledgeable, independent businessperson or professional." Americo argues the court of appeals improperly added "impartial" to the parties' list of qualifications. Myer counters that because "independent" and "impartial" are essentially synonymous, Americo was always obligated to name an impartial arbitrator.

We disagree that "independent" may be read interchangeably with "impartial." Various dictionary definitions might support some overlap between the two words, but when applied in the arbitration context, they carry distinct meanings. The parties in this case agreed to "tripartite arbitration," through which each party would directly appoint an arbitrator, and the two party-appointed arbitrators would agree on a third panelist. This method was commonplace when the parties executed their agreement in 1998. *See Burlington N. R.R. Co. v. TUCO Inc.*, 960 S.W.2d 629, 630 & n.2 (Tex. 1997) (describing the method as "often-used"). In a tripartite arbitration, each party-appointed arbitrator ordinarily advocates for the appointing party, and only the third arbitrator is considered neutral. *See, e.g.*, *Winfrey v. Simmons Food, Inc.*, 495 F.3d 549, 552 (8th Cir. 2007) (noting the "industry custom that party arbitrators are frequently not required or expected to be

5

neutral for ruling on disputes"); *Lozano v. Md. Cas. Co.*, 850 F.2d 1470, 1472 (11th Cir. 1988) (per curiam) ("An arbitrator appointed by a party is a partisan only one step removed from the controversy and need not be impartial."); *Metro. Prop. and Cas. Ins. Co. v. J.C. Penney Cas. Ins. Co.*, 780 F. Supp. 885, 892 (D. Conn. 1991) (In tripartite arbitration, "each party's arbitrator 'is not individually expected to be neutral.'") (quoting *Soc'y for Good Will to Retarded Children v. Carey*, 466 F.Supp. 702, 708 (S.D.N.Y. 1979)); *Matter of Astoria Med. Grp. (Health Ins. Plan of Greater N.Y.)*, 182 N.E.2d 85, 87 (N.Y. 1962) ("[T]here has grown a common acceptance of the fact that the party-designated arbitrators are not and cannot be 'neutral,' at least in the sense that the third arbitrator or a judge is.").

In fact, the arbitration agreement in *Burlington*, like the agreement in this case, "did not specify whether the two arbitrators that the parties unilaterally selected . . . would be neutral or would represent the interests of the party appointing them." *Burlington*, 960 S.W.2d at 630. But in *Burlington*, unlike this case, there was "no dispute . . . that the parties intended and understood that the party arbitrators would be aligned with, act as advocates for, and ultimately side with the appointing party." *Id.*

The AAA rules in place when the agreement was executed likewise reflect the prevalence of this practice. At that time, the rules provided that "[u]nless the parties agree otherwise, an arbitrator selected unilaterally by one party is a party-appointed arbitrator and not subject to disqualification pursuant to Section 19." AAA Commercial Arbitration § 12 (1996). Section 19 contained procedures to challenge arbitrators for partiality. *See id.*, § 19. Accordingly, the AAA rules

6

presumed party-appointed arbitrators were non-neutral, and the parties would have to "agree otherwise" to rebut this presumption.

The only indication the parties sought to "agree otherwise" is their requirement that party-appointed arbitrators be "independent." Americo argues that the parties chose the word "independent" not to require impartiality, but to proscribe arbitrators employed by or otherwise under the control of one of the parties. Americo's argument is certainly plausible; the practice of appointing arbitrators who are somehow formally associated with the party appointing them is not unheard of. *See, e.g., Astoria*, 182 N.E.2d at 86 (party appointed "one of the incorporators of [the company] and its president from 1950 to 1957" who was at the time "a member of its board of directors and one of its paid consultants"); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) ("Under the [terms of the arbitration agreement], Hooters is free to devise lists of partial arbitrators who have existing relationships, financial or familial, with Hooters and its management."). Indeed, to prevent this practice, some arbitration agreements expressly prohibit it. *See, e.g., Burlington*, 960 S.W.2d at 630 ("While [the arbitration agreements] prohibit the parties from selecting their own employees as arbitrators, [they] do not specify whether the two arbitrators that the parties unilaterally selected . . . would be neutral or would represent the interests of the party appointing them.").

Additional agreement terms lend support to Americo's interpretation. The agreement provides that arbitrators "shall be entitled to retain a lawyer to advise them as to legal matters, but such lawyer shall have none of the relationships to Americo or Myer (or any of their Affiliates) that are proscribed above for arbitrators." The only term that can be fairly read as a proscription of a "relationship" between a party and its chosen arbitrator is the requirement that all arbitrators be

"independent" of the party appointing them. But it does not follow that an "independent" arbitrator must also be impartial; indeed, an independent arbitrator could be partial or impartial. However, if we follow Myer's suggestion that "independent" is synonymous with "impartial," it becomes unclear what "relationship" the agreement is attempting to proscribe. Impartiality is a state of mind, but "independent" necessarily refers to a relationship—the subject is free from someone or something.

The industry norm for tripartite arbitrators when the parties executed their agreement was that party-appointed arbitrators were advocates, and the AAA rules in place at that time presumed such arbitrators would not be impartial unless the parties specifically agreed otherwise. Given the pervasiveness of the practice, and the clear AAA presumption the parties had to rebut, we believe the parties would have done more than require its arbitrators to be "independent" if they wished them to be impartial. "Independent" and "impartial" are not interchangeable in this context, and therefore we conclude the parties did not intend to require impartiality of party-appointed arbitrators.

**B**

Having concluded the terms of the agreement do not require impartial party-appointed arbitrators, we turn to the effect of the incorporated-by-reference AAA rules on arbitrator qualifications. There is no dispute the AAA rules would govern matters on which the agreement is silent. The question is whether AAA rules on arbitrator qualifications can, as the court of appeals concluded, supplement terms agreed on by the parties that specifically speak to the same point.

The court of appeals reasoned that the rules and the agreement "can be read together and harmonized to avoid any irreconcilable conflict." *Myer v. Americo Life, Inc.*, 371 S.W.3d 537, 543 (Tex. App.—Dallas 2012). In other words, because "impartial" could be added without negating any

8

expressly chosen qualifications, it was proper to do so to effectuate all the agreement's provisions. But this cannot be the end of our inquiry, or the specifically chosen terms of any agreement would be hopelessly open-ended whenever outside rules are incorporated by reference.

When an arbitration agreement incorporates by reference outside rules, "the specific provisions in the arbitration agreement take precedence and the arbitration rules are incorporated only to the extent that they do not conflict with the express provisions of the arbitration agreement." *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 832 (11th Cir. 1991). The Federal Arbitration Act, which the parties agree governs their agreement, requires that if an agreement provides "a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." 9 U.S.C. § 5. Similarly, the AAA rules in effect when the parties executed their agreement, as well as when arbitration was invoked, both provide that "[i]f the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed." AAA Commercial Arbitration Rules § 14 (1996), R-12 (2003).

Any attempt to harmonize the AAA impartiality rule with the parties' expressly chosen arbitrator qualifications misses the point. We do not construe "conflict" between an agreement and incorporated rules so narrowly as to find it exists only if the rule contradicts the agreement. A conflict can exist when an agreement and incorporated rules speak to the same point. Even if both can be followed without contradiction, they conflict because the parties have already addressed the matter and are not in need of gap-filling from the AAA rules. When the agreement and incorporated rules speak to the same point, the agreement's voice is the only to be heard.

Here, the parties chose a short list of arbitrator qualifications, and in doing so we must assume they spoke comprehensively. The parties chose "knowledgeable" and "independent" but not "impartial," and we think they meant not only what they said but also what they did not say. *See CKB & Assocs. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987) (*expressio unius est exclusio alterius*—the naming of one thing excludes another). And though we can concede the parties embraced some uncertainty by adopting AAA rules that were subject to change, we cannot conceive that they agreed to be bound by rules that would alter the express terms of their agreement. Nor can we imagine they took the trouble to expressly agree on some terms if their decision to incorporate AAA rules would leave those terms open to alteration. The AAA impartiality rule conflicts with the parties' agreement because the parties spoke on the matter and did not choose impartiality. When such a conflict arises, the agreement controls. *Szuts*, 931 F.2d at 832.

**\* \* \***

Because the AAA disqualified Americo's first-choice arbitrator for partiality, the arbitration panel was formed contrary to the express terms of the arbitration agreement. The panel, therefore, exceeded its authority when it resolved the parties' dispute. *See City of Pasadena*, 292 S.W.3d at 20; *I.S. Joseph Co.*, 803 F.2d at 399. Because the arbitrators exceeded their authority, the arbitration award must be vacated. *See* 9 U.S.C. § 10(a); *Bulko*, 450 F.3d at 625. Accordingly, we reverse the court of appeals' judgment and reinstate the trial court's order vacating the arbitration award.

_____
Jeffrey V. Brown
Justice

OPINION DELIVERED: June 20, 2014

10