In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00174-CV
_____

LEXINGTON INSURANCE COMPANY, Appellant

V.

EXXON MOBIL CORPORATION AND EXXONMOBIL OIL
CORPORATION, Appellees

On Appeal from the 136th District Court
Jefferson County, Texas
Trial Cause No. D-196,093

## MEMORANDUM OPINION

Appellant Lexington Insurance Company (Lexington) challenges the trial court's summary judgment awarding Appellees the face amount of Lexington's umbrella insurance policy of 25 million dollars, plus interest and attorney's fees. The issue in this case concerns the depth and breadth of the "exclusive remedy" defense provided by the Texas Workers' Compensation statute, Tex. Lab. Code Ann. §§ 408.001(a), 406.123(a), (e), 406.121(1), (5), and 406.012 of the Texas Workers'

Compensation Act, Tex. Lab. Code Ann. §§ 401.001-506.002. Lexington contends that Appellees, Exxon Mobil Corporation and ExxonMobil Oil Corporation (collectively Exxon), were not additional insureds under the policy issued to Brock Services, LTD (Brock), and that even if they were, two of the policy exclusions bar coverage. Lexington further contends that even if Exxon is entitled to payment under the policy, the eroded policy limits entitled Exxon to approximately 15 million dollars rather than the 25-million-dollar award. Finally, Lexington complains that Exxon is not entitled to attorney's fees. For the reasons set forth below, we affirm the trial court's judgment affirming the arbitration award that Exxon was an additional insured under the Lexington umbrella policy as found by the arbitration panel. However, the Lexington umbrella policy excluded coverage for the Exxon entities as to any claims made by the Brock plaintiffs because the plaintiffs had received benefits provided by a workers' compensation policy purchased by Exxon under its Owner Controlled Insurance Program (OCIP). Having determined that the Exxon entities are not entitled to any damages, the award of attorney's fees and interest must also be reversed and rendered that Exxon take nothing. Therefore, we reverse the judgment of the trial court and render judgment in favor of Lexington.

## I. Background

Brock contracted with Exxon Mobil Corporation (the operator of the facility) and its affiliates, including its parent company, Exxon MobilOil Corporation (owner

2

of the facility), to become a supplier of scaffolding services at the Exxon refinery in Beaumont, Texas, during a maintenance construction project at the refinery. The contract identified the parent corporation (and other related entities) as an affiliate in the contract at paragraph "(e)" to make them parties to the contract and all amendments thereto:

> (e) Definitions: "Affiliate." Definitions provided in the Enabling Articles are effective for the General Terms and Conditions, Exhibits and Addenda. For purposes of the Agreement and any Orders, "Affiliate" means (i) Exxon Mobil Corporation or any parent of Exxon Mobil Corporation; (ii) any company or partnership in which Exxon Mobil Corporation or any parent of Exxon Mobil Corporation now or hereafter (a) owns or (b) controls, directly or indirectly, more than fifty percent (50%) of the ownership interest having the right to vote or appoint its directors or their functional equivalents ("Affiliated Company"); (iii) any joint venture in which Exxon Mobil Corporation, any parent of Exxon Mobil Corporation, or an Affiliated Company is the operator; and (iv) any successor in interest to (i) through (iii) above.

The contract designated Brock and its employees as independent contractors and required Brock to obtain certain insurance coverage, including workers' compensation coverage, automobile liability coverage, employer's liability coverage, and commercial general liability coverage, naming Exxon as an additional insured. This contractual provision gave Exxon the option to obtain worker's compensation coverage on Brock's behalf and it did so under an OCIP. Each insurer was aware that the various liability insurance policies were being purchased under Exxon's OCIP program. Exxon's representative, Greg Kenney, admitted that, for years before, Exxon continuously purchased the workers' compensation insurance

3

policies for Brock at the various locations Brock contracted to work for them as part of Exxon's OCIP program which covered the Brock employees on the date of the accident. In addition to the contractually required coverage, Brock obtained an umbrella policy issued by Lexington with a limit of 25 million dollars. It is the Lexington umbrella policy that is the subject of this appeal.

In April 2013, during the policy period, an explosion at Exxon's facility killed and injured several people, and although none of the Brock employees were killed, three of them were injured. After receiving worker's compensation benefits, the injured Brock employees sued Exxon for personal injuries sustained in the accident. Exxon alleged that it was an additional insured under the Lexington umbrella policy and that, under the Lexington policy, Lexington had to provide a defense and to contribute 25 million dollars to a settlement Exxon ultimately made with the injured Brock employees. Lexington disagreed. In September 2014, Exxon sued Lexington to recover the policy amount and Exxon's attorney's fees.[1] In April 2015, two years after the accident, Exxon settled the Brock employees' claims for a total of approximately 35 million dollars.

After an arbitration proceeding solely determined that Exxon was, as it alleged, an additional insured under Lexington's umbrella policy issued to Brock,

---

[1] Exxon sued multiple defendants, but only its claims against Lexington are directly relevant to this appeal.

the trial court affirmed the arbitration award finding the Exxon entities were additional insureds. After cross-motions for summary judgment were filed, the trial court granted summary judgment against Lexington, finding that Lexington owed payment to Exxon under the umbrella policy, awarding Exxon the full 25-million-dollar limits under the Lexington umbrella policy.[2,3] The trial court also awarded Exxon its attorney's fees and both prejudgment and post-judgment interest on the entire sum. This appeal ensued.

## II. The Appeal

On appeal, Lexington's three main arguments posit that (1) the trial court should have vacated the arbitration award because Exxon's chosen non-impartial arbitrator was not impartial, (2) policy exclusions preclude Exxon from recovering under the umbrella policy, and (3) the policy limit had been eroded by prior settlements and the trial court erred in awarding Exxon's attorney's fees along with prejudgment interest on those attorney's fees.

Exxon argues the exclusions cited by Lexington do not apply, the arbitration award was properly confirmed, Lexington should get credit for only the $391,686 it paid for the settlement of the Howard-Morris claim, which reduced the 25-million-

---

[2] In a previous appeal, this court reversed and remanded the trial court's denial of arbitration. *Lexington Ins. Co. v. Exxon Mobil Corp.*, No. 09-16-00357-CV, 2017 Tex. App. LEXIS 3819, at *25 (Tex. App.—Beaumont Apr. 27, 2017, no pet.) (mem. op.).

[3] The trial court denied Lexington's motion for summary judgment.

dollar amount, but it disagrees with any further reduction of the policy limit. Finally, Exxon contends Exxon is entitled to prejudgment interest on their attorney's fees, but they concede for purposes of appeal that the prejudgment interest should accrue on an invoice-by-invoice basis from when each invoice for fees was actually paid by Exxon.

**A. The Arbitration**

Lexington's umbrella insurance policy contains a provision requiring the parties to arbitrate "in the event of a disagreement as to the interpretation of this policy[.]" To resolve any such dispute, the parties "mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) Arbitrator (hereinafter "umpire") as the sole and exclusive remedy." Lexington invoked the arbitration clause, Exxon objected, and the trial court ruled in favor of Exxon, denying arbitration. Lexington filed an interlocutory appeal, and we reversed and remanded the matter to the trial court ordering the case be submitted to arbitration.

In preparation for the arbitration proceeding, Lexington and Exxon each selected an arbitrator. When Lexington objected to Exxon's initial choice of an arbitrator, Exxon agreed to select an alternate individual as its arbitrator. Lexington objected to Exxon's second choice of arbitrator, also, alleging that his representation

6

of Exxon in a similar case resulted in an impermissible conflict of interest. The arbitration went forward despite Lexington's concerns over Exxon's newly chosen arbitrator, and the panel found that Exxon was an additional insured under the policy.

In arriving at its decision, the panel referenced the policy provision defining an insured as "[a]ny person or organization, other than the 'Named Insured,' included as an additional 'Insured' under 'scheduled underlying insurance,' but not for broader coverage than would be afforded by such 'scheduled underlying insurance.'" It then noted that "scheduled underlying insurance" included Lexington's commercial general liability policy that listed Exxon as an additional insured. Therefore, the panel concluded, Exxon was an additional insured under Lexington's umbrella policy but the panel deferred any findings regarding any exclusions in the policy, finding that such issues were beyond the scope of the arbitration.

### B. Policy Exclusions

First, Lexington argues that the policy exclusions for workers' compensation and employer's liability prevent Exxon from being considered an additional insured under the Lexington policy. Additionally, Lexington contends that sections of the Labor Code render the injured Brock employees Exxon employees. Therefore, according to Lexington, Exxon owed those employees workers' compensation

7

benefits only and, because of the umbrella policy exclusions, Lexington owes Exxon nothing.

The trial court rejected Lexington's arguments. On cross motions for summary judgment, the court determined that the workers' compensation and employer's liability exclusions, relied on by Lexington, do not apply and do not affect Exxon's additional insured status under Lexington's policy.[4]

## C. Eroded Policy Limit and Prejudgment Interest

The parties agree that Lexington paid settlements in two other cases; one settlement was for $391,686.68, and the other was for nine million dollars. They do not agree as to whether each of those payments affect any amount available to be paid in this case. Lexington contends that, if coverage applies, only $15,608,313.32 of the policy limits under the Lexington policy remains available, while Exxon argues that the entire 25 million is available and payable to Exxon, other than a reduction in the amount of $391,686.68.

Lexington also challenges the trial court's award of prejudgment interest, contending that this award is inappropriate as to attorney's fees. Exxon, conversely, contends that prejudgment interest on attorney's fees is proper, but for purposes of the appeal agrees to a recalculation of interest from the date each invoice was paid.

---

[4] It should be noted that the parties stipulated that the "voluntary payment" defense would not be invoked by Lexington.

## III. Analysis

### A. The Arbitration

We review de novo a trial court's order confirming, modifying, or vacating an arbitration award. *See Conn Appliances, Inc. v. Puente*, No. 09-18-00326-CV, 2020 Tex. App. LEXIS 6410, at *7 (Tex. App.—Beaumont Aug. 13, 2020, no pet.) (mem. op.); *Constr. Fin. Servs. v. Douzart*, No. 09-16-00035-CV, 2018 Tex. App. LEXIS 1551, at *6 (Tex. App.—Beaumont Feb. 28, 2018, pet. denied) (mem. op.) (citing *D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Texas law favors arbitration, and under Texas law, the review of arbitration awards is "extraordinarily narrow." *Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016) (citation omitted); *Conn Appliances, Inc.*, 2020 Tex. App. LEXIS 6410, at *8. An arbitration award has the same effect as a judgment of a court of last resort, and we indulge all reasonable presumptions in favor of the award and none against it. *See Conn Appliances, Inc.*, 2020 Tex. App. LEXIS 6410, at *7; *see also CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *Midani v. Smith*, No. 09-18-00009-CV, 2018 Tex. App. LEXIS 8954, at *10 (Tex. App.—Beaumont Nov. 1, 2018, pet. denied) (mem. op.). An appellate court gives great deference to an arbitrator's award, and such awards are presumed to be valid. *See Delgado*, 95 S.W.3d at 245. Generally, even where the arbitrator has made a mistake of law or fact, courts may not vacate or modify the award. *See Midani*, 2018 Tex.

App. LEXIS 8954, at *10. We consider the entire record in our review. *See Conn Appliances, Inc.*, 2020 Tex. App. 6410, at *7.

The grounds for vacating an arbitration award are expressly stated in the TAA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.088, .091; *see Hoskins*, 497 S.W.3d at 494 ("[T]he TAA leaves no room for courts to expand on those grounds, which do not include an arbitrator's manifest disregard of the law."). "Unless grounds are offered for vacating, modifying, or correcting an award under section 171.088 or 171.091 [of the Texas Arbitration Act], the court, on application of a party, shall confirm the award." Tex. Civ. Prac. & Rem. Code Ann. § 171.087. A trial court may modify or correct an arbitration award only "if[] (1) the award was obtained by corruption, fraud, or other undue means; (2) the rights of a party were prejudiced by: (A) evident partiality by an arbitrator appointed as a neutral arbitrator; (B) corruption in an arbitrator; or (C) misconduct or willful misbehavior of an arbitrator[.]" Tex. Civ. Prac. & Rem. Code Ann. 171.088(a)(1), (2).

In the absence of a clear agreement to limit the arbitrator's authority and expand the scope of judicial review, on appeal this Court may not exercise expanded judicial review. *See Midani*, 2018 Tex. App. LEXIS 8954, at *12 (citing *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 432 (Tex. 2017)). The court may not substitute its judgment for the arbitrator's nor speculate about the arbitrator's intent. *See Rouse v. Campbell*, No. 09-21-00023-CV, 2022 Tex. App.

10

LEXIS 9350, at *25 (Tex. App.—Beaumont Dec. 22, 2022, no pet.) (mem. op.) (citations omitted). The Federal Arbitration Act applies a similar standard. 9 U.S.C. § 10(a); *see United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987).

Lexington's initial argument, that the arbitration award resulted from a legal error in interpreting the policy and that the arbitration panel made a legal error in finding Exxon to be an additional insured, cannot constitute a ground for reversal because making an error of law is not one of the grounds for vacatur listed in either the Texas or the Federal Arbitration Act. Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a); 9 U.S.C. § 10(a); *Hoskins*, 497 S.W.3d at 494 (holding that grounds for vacating an arbitration award are limited to those set forth in the statute).[5]

Lexington also claims that the award was not only legally erroneous, but that "the parties' arbitration was corrupted by the evident undisclosed partiality and misconduct of" Exxon's chosen arbitrator. Lexington contends that the arbitration award in Exxon's favor was tainted by Exxon's chosen arbitrator's lack of neutrality. However, a non-impartial arbitrator's partiality is not a listed ground for vacatur under the statute. Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(2)(A). To the contrary, partiality is considered a reason to vacate an arbitration award only when

---

[5] Additionally, we note that Lexington's argument about Exxon not being an additional insured is inconsistent with the Texas Supreme Court's decision in *ExxonMobil Corp. v. Nat'l Union Fire Ins. Co.*, 672 S.W.3d 415, 419 (Tex. 2023), which involved an umbrella policy.

11

exhibited by a neutral arbitrator. *Id.* The fact that Exxon's designated arbitrator represented Exxon in a similar case has no impact on his ability to serve as Exxon's chosen arbitrator in this matter. *See Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22-23 (Tex. 2014). Exxon had the right to choose one of the members of the arbitration panel and Lexington had the right to choose one of the members of the arbitration panel as stated in the parties' contract. The arbitration provision did not require Exxon to select a neutral arbitrator.

In *Americo Life*, the Texas Supreme Court held that arbitrators need not be neutral if the parties' agreement does not require the parties to choose neutral arbitrators. 440 S.W.3d at 22-23. Instead, the arbitrators must be chosen in the manner specified in the contract; if they are not, they will lack jurisdiction to entertain the parties' dispute. *Id.* at 21. Here, as in *Americo Life*, the parties agreed to an arbitration procedure "through which each party would directly appoint an arbitrator, and the two party-appointed arbitrators would agree on a third panelist." *Id.* at 22. "[E]ach party-appointed arbitrator . . . advocate[d] for the appointing party, and only the third arbitrator [was] considered neutral." *Id.* (citations omitted). The *Americo Life* court made it clear that under this arbitration procedure, the party-appointed arbitrators were not expected to be impartial; it therefore was no ground for reversal that they were not neutral. *Id.* at 22-24. We hold that the complaint regarding the alleged partiality exhibited by a party's "non-impartial" arbitrator does

12

not give rise to a conflict of interest, misconduct, or misbehavior mandating either the disqualification of that arbitrator or the vacatur of the award. *Id.*

We overrule Lexington's issue regarding the arbitration award.

**B. Applicability of Policy Exclusions**

The parties filed cross-motions for traditional summary judgments about the policy exclusions. A party moving for traditional summary judgment has the burden of establishing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citations omitted). *See Samson Expl., LLC v. Bordages*, 662 S.W.3d 501, 508 (Tex. App.—Beaumont 2022, pet denied). Since both sides moved for summary judgment, we review all summary judgment evidence before the trial court to determine the questions presented by the parties in their competing motions. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). On an appeal of a ruling on cross-motions for summary judgment, we are required to render the judgment the trial court should have rendered. *See id.*

Exxon moved for summary judgment claiming that it is entitled to the full 25-million-dollar policy limits as an additional insured under the Lexington umbrella policy since the arbitration panel had already ruled that they are an additional insured under the policy. Lexington moved for summary judgment claiming that the

13

"worker's compensation and similar laws" exclusion (exclusion D) and the "employer's liability" exclusion (exclusion G) in the umbrella policy barred any recovery by Exxon under the umbrella policy even though they were determined to be additional insureds by the arbitration panel.

1.  Workers' Compensation Exclusion D.

The "Workers' Compensation and Similar Laws" exclusion D states: "[t]his insurance does not apply to ... [a]ny obligation of the 'Insured' under a workers' compensation, disability benefits or unemployment compensation law or any similar law."

Citing *Becon Constr. Co. v. Alonso*, 444 S.W.3d 824 (Tex. App.—Beaumont 2014, pet. denied), Lexington contends that, because Exxon procured the workers' compensation and employer's liability policies that covered the Brock employees through its OCIP program, they have been deemed the employer of the Brock employees and Exxon's liability for non-death personal injury is limited by the "exclusive remedy defense" set out in Tex. Lab. Code Ann. § 408.001. Under Lexington's view, because Exxon is entitled to the exclusive remedy defense as a statutory employer, then Lexington would not be liable to the Brock employees for anything other than the limits of the workers' compensation benefits. Lexington argues Exxon had no exposure to further claims against it once the Brock employees received benefits under the workers' compensation policy and the claims from the

14

Brock employees are excluded under The "Workers' Compensation and Similar Laws" exclusion D which states: "[t]his insurance does not apply to ... [a]ny obligation of the 'Insured' under a workers' compensation, disability benefits or unemployment compensation law or any similar law."

Even if we assume without deciding that Lexington is correct that Exxon Mobil had a worker's compensation bar defense to all the claims asserted by the Brock employees, by its express terms, exclusion D would not apply because it is clear under the record before us that Exxon Mobil is not seeking coverage under the Lexington policy for any obligation Exxon owed to the Brock employees "under a workers' compensation, disability benefits or unemployment compensation law or any similar law." So, we reject Lexington's argument that the Worker's Compensation Exclusion bars any coverage for the claims. That said, next we must determine if the Employer's Liability Exclusion applies.

2. Employer's Liability Exclusion G.

The "Employer's Liability" exclusion G states, in relevant part, that: "[t]his insurance does not apply to ... '[b]odily injury' to an 'employee' of the 'Insured' arising out of and in the course of (a) [e]mployment by the 'Insured'; or (b) [p]erforming duties related to the conduct of the 'Insureds' business' and 'applies [w]hether the 'Insured' may be liable as an employer or in any other capacity ...." In the arbitration decision, Exxon Mobil Corporation and ExxonMobil Oil Corporation

15

were both found to be additional insureds. Exxon operated under an OCIP which provided workers' compensation insurance and employer liability coverage, as well as general commercial liability coverage for all the contractors and subcontractors enrolled in the program who performed work at the Beaumont refinery. This program included Brock and its employees.

The summary judgment evidence shows that Exxon elected to procure workers' compensation and employer's liability insurance covering Brock's employees to include coverage for all of Brock's work at Exxon's Beaumont refinery. Exxon paid the premiums for the workers' compensation policy and the Brock employees thereafter received coverage under that same workers' compensation policy. The amount of the premiums was deducted from payments Exxon made to Brock. The summary judgment evidence indicates that all the insurers involved in this case were aware of the OCIP program and the participation by those contractors and subcontractors they were insuring because the OCIP practice and custom had been in use by that Exxon facility since approximately 1996.

Exxon's use of the OCIP program brings this situation squarely within section 406.123(e) of the Texas Labor Code. Tex. Lab. Code Ann. § 406.123(a). *See TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 76-78 (Tex. 2016). Pursuant to section 406.123(a), (e), the Exxon entities in this situation were considered the employers of the Brock employees for the purposes of the statute such that they were

16

entitled to the exclusive remedy defense provided by section 408.001(a), which states:

> Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

Tex. Lab. Code Ann. § 408.001(a).

The Brock employees were injured on the jobsite at the Exxon facility in Beaumont, Texas. All the injuries were related to the work at the facility. None of the Brock employees were killed so the exception for gross negligence resulting in wrongful death provided by paragraph (b) would not apply. *See* Tex. Lab. Code Ann. § 408.001(b).

Lexington contends that Exxon, the premises owner, became the "employer" of the employees of the general contractor and subcontractors of the project by participation in the OCIP, as provided by section 406.123 of the Texas Labor Code, and outlined in the Texas Supreme Court's holding in *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 438 (Tex. 2009). In that case the court found that Entergy Gulf States, "entered into a contract with [IMC] for IMC to perform various maintenance work at Entergy's plant in Bridge City, Texas[]" and a premises owner can be a general contractor under the definition provided in the Act. *Id.* at 438. The definition of "general contractor" is found at section 406.121:

17

"General contractor" means a person who undertakes to *procure* the performance of work or a service, either separately or through the use of subcontractors. The term includes a "principal contractor," "original contractor," "prime contractor," or other analogous term. (emphasis added).

Tex. Lab. Code Ann. § 406.121(1).

Under the holding in *Entergy Gulf States*, one who "procures" something is one who engages in the act of "getting or obtaining something," citing Black's Law Dictionary. 282 S.W.3d at 437-38. The record shows that Mobil Oil Corporation (n.k.a. Exxon) and Exxon Mobil Corporation, through its subsidiary, ExxonMobil Refining & Supply Company, entered into a contract on September 15, 2008, by which Exxon Mobil Corporation would "provide services" to [Exxon] Mobil Oil Corporation. The "services" that were to be provided included "such services through use of its Affiliates or third-party subcontractors." The services to be provided were detailed in "Schedule 2" of the contract and included a broad array of services ranging from "operations" of the plant to "maintenance," "engineering," "project development" and "design," and "such other service as [the parties to the contract] may from time to time jointly determine." The facts submitted in the summary judgment proceedings show that ExxonMobil Oil Corporation contracted through Exxon Mobil Corporation to "procure" services through contracts with various contractors and subcontractors (including Brock) to perform work at the Beaumont refinery as that term is described by the Supreme Court in *Entergy Gulf*

*States*. *Id.* This contract provided that the parent company, Exxon Mobil Oil Corporation, and those affiliates who were controlled by more than 50% ownership, were a part of the contract that provided for the OCIP program. This evidence supports the allegation that both entities met the definition of a "general contractor" found at section 406.121. Texas Labor Code Ann. § 406.121.

Exxon Mobil Corporation and ExxonMobil Oil Corporation also undertook an OCIP in which Exxon Mobil Corporation paid the premiums for the workers' compensation and employer's liability insurance policies insuring participating subcontractors (which included Brock in this case). The Services Agreement between Brock and the Exxon entities required Brock to obtain workers' compensation, employer's liability, a commercial general liability and automobile liability policies, but paragraph 14(c) of the Agreement provided that "[Exxon] may elect to furnish or to arrange for [Brock] all of or any part of the insurance required in this Section. If [Exxon] elects this alternative…[Brock's] compensation shall be reduced by an amount equal to [Exxon's] cost of the insurance." The parties agreed that Exxon provided the coverage pursuant to the OCIP. This type of OCIP arrangement is intended and encouraged by the Legislature, under section 406.123, because it creates blanket coverage to all workers on the job site and it minimizes the risk that a subcontractor's employees will go uncovered on a project. *See TIC Energy & Chem., Inc.*, 498 S.W.3d at 74 (citing *HCBeck, Ltd. v. Rice*, 284 S.W.3d

349, 359-60 & n.36 (Tex. 2009), quoting *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 140, 142 (Tex. 2003)).

The Certificate of Liability Insurance issued to ExxonMobil Oil Corporation, in effect on the date of the accident, certifies that Brock was insured at the time of the accident under both the Lexington Insurance General Liability policy and Umbrella policies (under which Exxon Mobil Corporation and its affiliates are considered additional insureds) as well as under the Indemnity Insurance Company of North America workers' compensation and employer's liability policy issued to Brock on January 1, 2013. Exxon Mobil Corporation paid the premiums pursuant to the OCIP for Brock's workers' compensation and employer's liability insurance policy, as well as for Brock's commercial general liability policy. Exxon deducted the costs from Brock's contract payments. Therefore, Exxon Mobil Corporation and ExxonMobil Oil Corporation were considered to be a statutory "employer" for purposes of the workers' compensation provisions of the Texas Labor Code. *See* Tex. Lab. Code Ann. § 406.121. As such, Exxon Mobil Corporation and ExxonMobil Oil Corporation were each entitled to the exclusive remedies of section 408.001 of the Texas Labor Code and were not subject to common law actions for negligence. *See Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 523 (Tex. 1995).

Because Exxon procured workers' compensation coverage for Brock's employees under the OCIP, Exxon "shall be treated as the employer" of Brock and Brock's employees (including the personal injury plaintiffs in the underlying case) but "only for purposes of the workers' compensation laws of this state." Tex. Lab. Code Ann. § 406.123(b) and (e). The Texas Supreme Court has recently summarized some of the purposes of the Workers' Compensation Act as follows:

> The Texas Legislature enacted the Act in 1913 in response to the needs of workers, who, despite escalating industrial accidents, were increasingly being denied recovery. Covered employees sustaining work-related injuries are guaranteed prompt payment of their medical bills and lost wages without the time, expense, and uncertainty of proving liability under common-law theories. The employee may recover without establishing the employer's fault and without regard to the employee's negligence. In exchange, the Act prohibits employees from seeking common-law remedies from their employers by making workers' compensation benefits an injured employee's exclusive remedy. The Act ultimately struck a bargain that allows employees to receive a lower, but more certain, recovery than would have been possible under the common law.

*Mo-Vac Serv. Co., Inc. v. Escobedo*, 603 S.W.3d 119, 124 (Tex. 2020) (internal quotation marks and citations omitted).

An entity's status as employer "for the purposes of the worker's compensation laws" impacts both the employees' ability to be compensated for work-related injuries and the entity's potential liability to the employees, because under the Worker's Compensation Act, an employer who does not provide workers' compensation insurance coverage for its employees remains liable in tort and waives

21

all common-law defenses. Whereas an employer who does provide workers' compensation insurance coverage is shielded from liability to its employees. *See* Tex. Lab. Code Ann. §§ 406.033, 408.001. It is this risk of liability as employer that the "Employers' Liability" exclusion is intended to address.

Exxon Mobil argues that to determine whether the Employer's Liability exclusion applies, we must first determine whether the Brock employees were "employees" of "the Insured" as defined in the exclusion and the insurance policy. And Exxon contends they were not Exxon's employees at common law or under the contract between Brock and Exxon Mobil because that agreement expressly stated that Brock's employees were not Exxon's employees and that they were independent contractors. According to Exxon, this conclusion does not change even though they may be deemed to be the "statutory employer" under section 406.123 of the workers' compensation statute.

Lexington disagrees. According to Lexington, the word "employee" as used in the context of an "Employers' Liability" exclusion necessarily includes those who, according to section 406.123, are deemed to be the insured's employees "for the purposes of the workers' compensation laws," because an employer's liability to its employees already has protection from that risk under worker's compensation laws and insurance for worker's compensation benefits. Historically, Commercial

22

General Liability coverage was never intended to provide coverage an insured's liability to its own employees who sustain work-related injuries:

> Most CGL policies have provisions that exclude coverage for claims that would otherwise be covered under workers' compensation insurance, which is required in most states. In fact, CGL policies were developed alongside workers' compensation insurance in the late 1800s and early 1900s. When the adoption of workers' compensation schemes all over the country significantly reduced employers' liabilities to their employees, employers became interested in insuring their liabilities to members of the public as well. Thus, public liability insurance was developed and refined over several decades to become the modern CGL insurance. *CGL policies were never meant to cover claims by employees against their employers*.

*Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 397-98 (Tex. 2016) (emphasis added) (citations omitted).

Similarly, in the context of this excess policy, it was never intended to provide coverage for workers' compensation or benefits for an employer's liability to its own employees. The umbrella policy expressly states that the excess policy provides no broader coverage than the underlying CGL policy. And we conclude the excess policy does not provide Exxon liability coverage for bodily injuries sustained by its statutory employees to include the personal injury of plaintiffs in the underlying case.

In their brief, Exxon cites the cases of *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551 (Tex. 2022), *In re Millwork*, 631 S.W.3d 706 (Tex. 2021), and *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1 (Tex. 2015) for

the proposition that the Texas Supreme Court has applied the dictionary definition of "employee" rather than the statutory definition Lexington uses in this case. However, we conclude these cases are distinguishable.

*In re Millwork* is a case concerning the question of whether a party has control over a co-defendant to the extent that the party's counsel can be compelled to produce a co-defendant who has been served a subpoena for deposition in the case under Rule 199.3. Tex. R. Civ. P. 199.3; s*ee In re Millwork*, 631 S.W.3d at 709. The limited evidence in that case was that a truck driver, Lazaro Cabrera, had fabricated a granite slab and delivered it to Texan Millwork when an accident occurred that resulted in the death of a Texan Millwork employee. The employee sued Cabrera and Texan Millwork and sought Cabrera's deposition to establish that Texan Millwork was liable for Cabrera's action for something other than an independent contractor. This was a death case in which the employee of Texan Millwork was killed. At no point in this case was there a finding that an OCIP agreement was in place between Texan Millwork and Cabrera, or any other subcontractors. As such, this case is not helpful to determine whether an OCIP agreement creates an employer-employee relationship relating to a non-death on-the-job injury claim that invokes the exclusive remedy defense of the labor code.

The narrow issue in *Klumb* concerned the exclusive authority of the pension system to define "employee" for purposes of the pension plan for Houston municipal

employees. The issue did not involve an OCIP program, a personal non-death injury to an employee, or anything related to on-the-job injuries at a construction site. *Klumb*, 458 S.W.3d 1.

In *Maxim Crane Works* (Maxim), a general contractor, Skanska USA Building, Inc. (Skanska), was contracted to build an office campus in Houston. Skanska offered a contractor-controlled insurance program (CCIP) that included workers' compensation coverage and commercial general liability coverage obtained from Zurich American Insurance Company (Zurich) very similar to the OCIP program Exxon employed in our present case. *Id.* at 553. While Skanska required all of its contractors and subcontractors to enroll in its CCIP, it excluded, among others, subcontractors who do not perform actual labor at the project site. *Id.* at 553. Maxim leased a crane to a subcontractor on the project, Berkel & Company Contractors, Inc. (Berkel), for use on the construction project with no labor provided. *Id.* at 553-54. Maxim was excluded from Skanska's CCIP program. The leased crane fell on a Skanska employee, named Lee, who sued Berkel and Maxim. *Id.* at 554. Lee's case against Berkel was reversed and rendered on appeal based upon the exclusive remedy provision of the labor code. *Id.* at 555. Maxim's claims for indemnity against Berkel were also denied. *Id.* Maxim, as an additional insured under Berkel's insurance policy then sued Zurich demanding indemnity for its costs and for payment of a judgment against it obtained by Lee. Zurich invoked the anti-

25

indemnity act, found at Insurance Code § 151.102-104, claiming that Zurich's insured, Berkel, cannot be forced to indemnify Maxim for Maxim's own negligence (although it can do so in a voluntary agreement and had not done so here). In response, Maxim argued that it should be entitled to the same exclusive remedy provision of the workers' compensation statute as Berkel since it should be considered a co-employer along with Berkel. *Id.* However, as Justice Busby pointed out, Maxim was not enrolled in Skanska's CCIP and could not be considered a statutory employer under the workers' compensation statute. *Id.* As explained by Justice Busby:

> Maxim's absurdity argument boils down to a complaint that it is unfair to subject Maxim alone to tort liability for Lee's injury when other responsible parties are protected by the TWCA's exclusive remedy provision. But that protection does not derive from the TAIA employee exception; it stems from the TWCA's provision of "reciprocal benefits to subscribing employers and their employees." By way of illustration, if Berkel had been given the option and elected not to enroll in Skanska's CCIP, Berkel would not have been entitled to assert the exclusive remedy defense. Conversely, although the parties dispute the degree of Maxim's relative bargaining power, Maxim does not dispute that neither the TWCA nor the TAIA prohibited Skanska from allowing equipment vendors like Maxim to participate in Skanska's CCIP and thereby entitle them to assert the exclusive remedy defense as well.

*Id.* at 560 (citations omitted).

In a workplace injury negligence case, when the parties have contracted to participate in an OCIP insurance program under section 406.123, Tex. Lab. Code, the general contractor (and under this contract its parent company and affiliates)

26

have protection from the worker's compensation statute from any further liability to an injured employee, excluding death, of a participating subcontractor once the workers' compensation benefits have been paid. To interpret the Employer Liability Exclusion contained in the underlying CGL policy and umbrella policy differently would be inconsistent. The excess policy had a definition of "employee" in the definitions section which expressly includes "leased workers" but does not include "temporary workers." (Definition g.).

In our case it is agreed that the evidence shows that Exxon maintained an OCIP insurance program by which the subcontractor, Brock, and Brock's employees were provided workers' compensation coverage paid for by Exxon for which Brock's compensation was reduced. As a statutory "employer," Exxon was entitled to invoke the exclusive remedy defense of the workers' compensation statute for personal injuries incurred by Brock's employees even as to its own negligence. This principle has been repeatedly upheld by the Texas Supreme Court, including the relatively recent case of *Waste Management of Texas v. Stevenson*, 622 S.W.3d 273, 276-85 (Tex. 2021) (citing *HCBeck, Ltd.*, 284 S.W.3d at 350, *Wingfoot Enters.*, 111 S.W.3d at 143-46, and *Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992)). In *Waste Management*, Stevenson was hired by an employee leasing company, Taylor Smith Consulting (Taylor Smith), to do temporary labor for Waste Management. While working a garbage-collection route, a truck driven by a Waste Management

27

employee backed over Stevenson's leg and foot. Workers' compensation insurance covering Stevenson was provided by the policy covering the employees of both Waste Management and Taylor Smith. The master agreement between Taylor Smith and Waste Management provided that Taylor Smith's workers were "independent contractors" to Waste Management. *Id.* at 276-77. The ultimate question was whether Stevenson was an "employee" of Waste Management for workers' compensation purposes. In this negligence suit the Supreme Court reasoned that Stevenson was "in the service" of Waste Management, which had provided workers' compensation insurance covering Stevenson (and the other Taylor Smith employees), as contemplated by the definition of "employer" found in the Texas Labor Code. *See* Tex. Lab. Code Ann. § 401.012(a); *Waste Mgmt. of Tex.*, 622 S.W.3d at 283. Since Waste Management was considered an employer under the workers' compensation statute, it was entitled to the "exclusive remedy" defense to Stevenson's claims of personal injury, and it was entitled to summary judgment on Stevenson's claims. *Id.* at 283.

The Lexington Umbrella policy contains an "Employer's Liability" exclusion, identified as paragraph "G" under the exclusions contained in the umbrella policy.[6] Lexington contends this exclusion applies and relieves Lexington

---

[6] **G. Employer's Liability**
    **1.** "Bodily injury" to an "employee" of the "Insured" arising out of and in the course of:

28

of liability in this instance to the Exxon entities. "We must give effect to the parties' intentions, as expressed in their agreement[,]" and "[w]e will give a contract language its plain, grammatical meaning unless it 'would clearly defeat the parties'

---

      **a.** Employment by the "Insured"; or
      **b.** Performing duties related to the conduct of the "lnsured's" business; or
**2.** Any claim or "suit" brought by the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph 1 above.

This exclusion applies:
**1.** Whether the "Insured" may be liable as an employer or in any other capacity; and
**2.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the "Insured" under an "insured contract".

With respect to injury arising out of a "covered auto", this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to worker's compensation benefits. For the purpose of this insurance, a domestic "employee" is a person engaged in household or domestic work performed principally in connections with a residence premises.

This exclusion does not apply to the extent that valid "scheduled underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury".

Coverage under this policy for such "bodily injury["] or "property damage" will follow the terms, definitions, conditions and exclusions of "scheduled underlying insurance", subject to the "policy period", limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by "scheduled underlying insurance".

29

intentions." *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019) (citations omitted). At the time the insurance contract was entered, all parties knew that they were participating in an OCIP program pursuant to section 406.123 that provided that the employees of a subcontractor would also be considered the employees of the general contractor in the event of personal bodily injury to those employees incurred at the premises while on the job at the general contractor's worksite. As an entity that meets the definition under the Texas Labor Code of an "employer," Exxon was entitled to the "exclusive remedy" defense to personal injury claims brought against it by the Brock employees. *See* Tex. Lab. Code Ann. § 401.012(a); *Waste Mgmt. of Tex.*, 622 S.W.3d at 283.

We conclude that the Employer Liability Exclusion in the umbrella policy at issue applies and expressly excludes coverage for the Brock employees' work-related injuries because the Brock employees who were injured were statutory "employees" of Exxon Mobil (the Insured). Lexington had no duty to provide liability coverage for the claims in question.

### C. The Duty to Defend

Exxon's fifth amended petition complained that Lexington failed to provide a defense to the Brock employees' suit and to indemnify Exxon for the settlement amounts it paid. An insurer's duty to defend and it duty to indemnify are two separate duties. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.

1997) (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821-22 (Tex. 1997)). The duty to defend is determined by the petition's allegations and the insurance policy's language. *Id.* at 82 (citing *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 141 (Tex. 1997)). The Brock plaintiffs' third amended petition alleged that Exxon, "through their respective agents, servants, and/or employees negligently caused or negligently permitted such condition to exist, in spite of the fact that Defendants knew, or in the exercise of ordinary care should have known, of the existence of the condition." These allegations, standing alone, would likely bring these claims within the umbrella policy.

However, as discussed above, the allegations further bring these claims within the clearly stated exclusions of the umbrella policy which state that this policy specifically excludes claims for "Bodily injury" to an "employee" of the "Insured" arising out of and in the course of: "**a.** Employment by the 'Insured'; or **b.** Performing duties related to the conduct of the 'lnsured's' business[.]" The Brock employees' third amended petition states that each of these employees was injured "working in the course and scope of his employment with Brock as a scaffolding contractor at Defendant Exxon Mobil's facility in Beaumont Texas." These pleadings conclusively establish that the Brock plaintiffs were suing for injuries received in the course and scope of employment at the Exxon facility which was covered by the OCIP program and prohibited the employees from bringing claims

31

for personal injury against Exxon and other OCIP participants after workers' compensation benefits had been paid. The parties all agreed that those workers' compensation benefits had been paid prior to the Brock employees' suit being filed.

This court has previously held that the insurer has no duty to defend when the plaintiff's pleadings set forth facts that bring the claim within a clearly stated policy exclusion. *See Spaugh v. Northern Cnty. Mut. Ins. Co.*, No. 09-96-158 CV, 1997 Tex. App. LEXIS 4424, at \*\*5-10 (Tex. App.—Beaumont, August 14, 1997, no pet.). In *Spaugh*, a car driven by Adrian and owned by his mother Brenda collided with Spaugh and caused personal injuries to Spaugh. Adrian was an excluded driver under his mother's auto insurance policy. This court held that, even though Spaugh had pleaded an action for negligent entrustment against Adrian's mother, which facially was covered by the policy, the policy exclusion excused Northern County Mutual's duty to defend or provide coverage under the policy. *Id.* at \*1. The court also concluded that the "excluded driver" endorsement, typically found in Texas auto policies, was consistent with the statutory scheme adopted by the Legislature in the Responsibility Act to protect claimants from losses by requiring all drivers to be responsible for damages arising out of their automobile usage. *Id.* at \*8 (citations omitted). This logic is equally applicable in this case where the parties knew when the policies were issued that Exxon had been contracting for contractors to participate in an OCIP program under section 406.123 of the Labor Code and all

32

parties could anticipate that a participating employer's employee would be limited in a claim against a participant to the remedies provided by the workers' compensation laws.

This principle was also followed in the per curiam opinion by our Supreme Court, cited above, in *Griffin*, 955 S.W.2d at 84. Griffin was shot in a drive-by shooting by two passengers in a car driven by James Royal. Royal's auto policy, issued by Farmers, contained an exclusion for "intentional acts." *Id.* at 82. The plaintiff's petition alleged "Several rounds of gunfire were discharged from the vehicle in the direction of [Griffin]. …This drive-by shooting was a random act of violence which has permanently injured and scarred [Griffin"] and went on to allege legal theories of negligence and gross negligence. The court found Griffin's claim fell within the policy exclusion which excluded coverage for intentional acts despite the negligence allegations in the plaintiff's petition. *Id.* at 82-83.

Following the "eight corners doctrine," Lexington's duty to defend has been negated by the Employer's Exclusion contained in the policy. *See D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009) (internal citations omitted) (The duty to defend, however, is established according to the eight-corners doctrine, considering only the factual allegations in the pleadings and the terms of the policy.). Therefore, Lexington was justified in refusing to provide a defense based upon this exclusions. We sustain Lexington's issue on this point.

33

## D. The Duty to Indemnify

The duty to indemnify is established by the facts actually established in the underlying suit. *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009) (facts actually established in the underlying suit control the duty to indemnify). The Brock employees were working as statutory employees of Exxon Mobil, were injured on the job at the Exxon jobsite, at the time and place where Brock was participating in Exxon's OCIP program pursuant to section 406.123 of the Labor Code, and the Lexington umbrella policy specifically excluded coverage for Exxon's "employees." *See generally Garcia*, 893 S.W.2d at 523; *Waste Mgmt. of Tex.*, 622 S.W.3d at 276-85; *HCBeck, Ltd.*, 284 S.W.3d at 350, *Wingfoot Enters.*, 111 S.W.3d at 143-46, and *Perez*, 842 S.W.2d at 630; s*ee also Griffin*, 955 S.W.2d at 82. We sustain Lexington's issue on this point.

## E. The Remaining Issues

The issue of a reduction, if any, of the remaining policy limits is moot. Having determined that the Exxon entities are not entitled to any coverage under the policy, the award of attorney's fees and interest must also be reversed and rendered that Exxon take nothing. *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 671 (Texas 2009).

## IV. Conclusion

We reverse and render judgment that the Exxon entities take nothing because their right of recovery is excluded by the policy and Lexington had no duty to defend or indemnify under the umbrella policy. Therefore, we reverse and render judgment in favor of Lexington.

REVERSED AND RENDERED.

JAY WRIGHT
Justice

Submitted on October 9, 2023
Opinion Delivered April 3, 2025

Before Golemon, C.J., Johnson and Wright, JJ.