# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00571-CV

---

**AMLI Downtown Austin, L.P., Appellant**

**v.**

**Peli Peli Austin, LLC, Appellee**

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-002700, THE HONORABLE TIM SULAK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Peli Peli Austin, LLC, (Peli Peli) sued AMLI Downtown Austin, LP, (AMLI) for allegedly breaching the lease between the parties under which Peli Peli intended to open and operate a restaurant in a building owned by AMLI. Following a bench trial, the trial court rendered judgment that AMLI breached the lease and awarded Peli Peli $1,292,665.15 in damages. AMLI appeals the portion of the trial court's judgment concluding that AMLI breached the lease and awarding Peli Peli damages. We will reverse the portion of the judgment ruling in favor of Peli Peli on its breach of the lease claim and render judgment that Peli Peli take nothing.

## BACKGROUND

AMLI built several multiple-story buildings on a block in downtown Austin, Texas, as part of a mixed-use project. The first floor of each of the buildings was dedicated to

nonresidential purposes, and AMLI entered into a long-term contract with a restaurant to occupy a portion of the first floor of one of its buildings. Several years later, the restaurant owner decided to terminate the lease and vacate the premises. Around that same time in 2016, Peli Peli decided to expand its restaurant business to the Austin area.

After learning about the AMLI restaurant space and viewing it, Peli Peli decided to lease the space. AMLI and Peli Peli negotiated the terms of a lease, and the three founders of Peli Peli signed as guarantors of the lease. The agreement referred to the leased space as the "Demised Premises" and described the Demised Premises by listing an address and setting out the square footage of the leased space. The lease also explained that the Demised Premises was in the "Project," which was described as a mixed-use project located on a block in downtown Austin. The lease set out the amount of the rent as well as the responsibilities of Peli Peli and AMLI. As relevant to this appeal, the lease specified that AMLI was required to provide the "existing exhaust chase for venting." The lease also contained an "AS IS" clause, expressing that Peli Peli agreed to lease the Demised Premises as is. Additionally, the lease included warranty disclaimers stating that AMLI made no warranties of any kind regarding the Demised Premises or the Project. Once the lease was executed, Peli Peli began renovating the interior of the former restaurant.

A City of Austin inspection found significant issues with the grease-duct system that the previous restaurant had used. That system started in the vent hood in the kitchen, ran vertically through the residential floors above the restaurant, and ended on the roof. After learning that the grease-duct system had to be replaced, Peli Peli discussed the situation with AMLI. The parties disagreed about who should cover the costs of replacing the grease-duct system. Although the parties attempted to negotiate the issue, Peli Peli ultimately decided that it

2

was not obligated to cover the replacement costs for the duct system under the terms of the lease and sued AMLI, alleging that AMLI breached the lease terms by failing to provide a functional grease-duct system, engaged in deceptive trade practices, fraudulently induced Peli Peli into signing the lease, and engaged in negligent misrepresentation.[1] In response, AMLI asserted that the lease placed all responsibility regarding the functionality of the grease-duct system on Peli Peli. In addition, AMLI asserted a counterclaim against Peli Peli and the guarantors for breach of contract and sought damages caused by the alleged breach.

During trial, several witnesses testified through live testimony or by deposition. After considering the evidence, the trial court rendered judgment in favor of Peli Peli and awarded it $1,292,665.15 in damages for its breach of contract claim. Regarding AMLI's claims against Peli Peli and the guarantors, the trial court rendered a take-nothing judgment. In its judgment, the trial court awarded Peli Peli prejudgment and post-judgment interest but explained that attorney's fees were not authorized in this case. Regarding all other claims, the judgment stated that those claims were all denied.

After rendering its judgment, the trial court issued findings of fact and conclusions of law supporting its ruling, including the following:

> Based upon the evidence, the Court finds that there is no universally accepted definition of the phrase "existing exhaust chase for venting." Accordingly, because this phrase is ambiguous and reasonably susceptible to more than one interpretation, the Court adopts [Peli Peli]'s interpretation of this term.
>
> The Court therefore adopts [Peli Peli]'s interpretation of the Retail Lease.
>
> Under the Retail Lease, the Landlord was obligated not only to provide a chase, but the Landlord was also obligated to provide an existing exhaust chase for venting, whereby the Tenant could utilize the existing system to support venting

---

[1] Peli Peli also asserted a statutory fraud claim, but the trial court granted a partial summary judgment in favor of AMLI on that ground.

3

with its existing grease duct system such that the Tenant could operate its restaurant and vent safely in the leased space on floor 1, and continuing thereafter up through floors 2-7, where residents lived, and eventually out of the building and onto the roof of the building. Because AMLI failed to provide an existing exhaust chase for venting, it breached the contract between the parties . . . .

AMLI appeals the trial court's judgment.

## DISCUSSION

On appeal, AMLI presents several related arguments asserting that the trial court erred by considering extrinsic evidence to determine the meaning of the lease because the lease is unambiguous and did not require the delivery of a functioning grease-duct system. More specifically, AMLI contends that the phrase "existing exhaust chase for venting" is not ambiguous, that the lease required AMLI to provide access to the existing exhaust chase, and that the provisions of the lease read as a whole, including the as-is clause and the warranty disclaimers, support that construction. On appeal, AMLI does not challenge any other portion of the trial court's judgment, including the denial of its own breach-of-contract claim.

In its appellee's brief, Peli Peli argues as it did in the trial court that the phrase "existing exhaust chase for venting" is not defined in the lease, is ambiguous, and is susceptible to more than one reasonable interpretation, including Peli Peli's suggested construction as including a functional grease-duct system. Building on this premise, Peli Peli contends that because the phrase is ambiguous, the trial court correctly relied on the extrinsic evidence presented at trial when determining the meaning of the phrase and construing the lease, and Peli Peli summarizes trial testimony supporting its argument that the phrase was meant to include a functioning grease-duct system.

4

"As a matter of law, a lease is defined as a grant of an estate in land for a limited term, with conditions attached," *1320/1390 Don Haskins, Ltd. v. Xerox Com. Sols., LLC*, 584 S.W.3d 53, 68 (Tex. App.—El Paso 2018, pet. denied), and "is a contract between parties," *Dhingra v. Mendelow*, No. 14-00-00770-CV, 2001 WL 1136149, at *3 (Tex. App.—Houston [14th Dist.] Sept. 27, 2001, no pet.) (op.). "In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)); *see also Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020) (noting that when interpreting lease, appellate court must determine and enforce parties' intent as expressed within four corners of written agreement). The proper interpretation of an unambiguous lease is a question of law determined de novo. *See Piranha Partners*, 596 S.W.3d at 743.

In construing a contract, courts may consider the facts and circumstances surrounding the creation of a contract. *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014). While this type of evidence can be used to "inform the contract text and render it capable of only one meaning," *id.*, "extrinsic evidence can be considered only to interpret an ambiguous writing, not to create ambiguity," *Kachina Pipeline*, 471 S.W.3d at 450. "A contract is not ambiguous simply because the parties disagree over its meaning." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). "Rather, '[i]f a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous.'" *Kachina Pipeline*, 471 S.W.3d at 450 (quoting *National Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam)).

"When discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). "We give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Dynegy*, 294 S.W.3d at 168. If the agreement does not define a term, we presume that the parties intended the term's ordinary meaning and consult dictionaries to discern that meaning. *See Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Tawes*, 340 S.W.3d at 425 (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

With these principles in mind, we conclude that the lease is unambiguous and did not obligate AMLI to provide a functioning grease-duct system. The lease provision at issue states that AMLI "is not required to do any work in connection with the Demised Premises or this Lease, provided [AMLI] shall provide: . . . (b) existing exhaust chase for venting." Merriam-Webster defines the term "chase" as "a channel (as in a wall) for something to lie in or pass through." *Chase*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/chase (last visited Mar. 7, 2022). Construction industry dictionaries similarly define the term as "[a] rebate or channel cut into walls to accommodate services" or "[a] channel cut into masonry or timber usually to run service media like cable and pipes" and distinguish between the channel and the "[d]ucting, wires, and pipework" that "are clipped into the rebate." *See Chase*, A Dictionary of Construction, Surveying and Civil Engineering (1st ed. 2012) (available at oxfordreference.com) (last visited Mar. 7, 2022); *Chase*, Dictionary of Construction Terms 54 (1st ed. 2012); *see also Amplatz v. Country Mut. Ins. Co.*, 823 F.3d 1167, 1170 n.2 (8th Cir. 2016) (noting that chase refers to channel cut into walls to accommodate services).

6

In addition, case law discussing chases in the construction context similarly have distinguished between the chase and the duct work inside. *See Chandler v. Crosby*, 379 F.3d 1278, 1283 (11th Cir. 2004) (describing "chase" as "a long corridor" "that contains plumbing, duct work and electrical services"); *Houston Specialty Ins. Co. v. Meadows W. Condo Ass'n*, No. 13-02150, 2014 WL 6982520, at *1 (W.D. La. Dec. 9, 2014) (mem. op.) (mentioning "duct work . . . within . . . the chase"); *EM Bldg. Contractors Servs., LLC v. Byrd Bldg. Servs., LLC*, No. 05-19-00153-CV, 2020 WL 4592791, at *13 (Tex. App.—Dallas Aug. 11, 2020, no pet.) (mem. op.) (discussing inspections related to "chases for air ducts").

Based on the preceding, the phrase "exhaust chase for venting" has a definite legal meaning and describes a type of channel that could be used for exhaust purposes. *See Exhaust*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/exhaust (last visited Mar. 7, 2022); *see also Amplatz*, 823 F.3d at 1170 & n.2 (referring to channel or rebate for fireplace as "fireplace chase"). Moreover, the lease only required that AMLI provide access to the "existing" chase, meaning the one "already or previously in place, before being replaced, altered, or added to." *See Existing*, Dictionary.com, https://www.dictionary.com/browse/existing (last visited Mar. 7, 2022). Further, the provision stated that AMLI had no obligation to perform any work in connection with the lease other than to provide the existing chase and made no representation or promise regarding the functionality or presence of any duct work inside the chase. Accordingly, the provision unambiguously required AMLI to provide access to the chase in its current state that had been used for venting and did not obligate AMLI to provide a functioning grease-duct system inside the chase.

This construction of the provision is consistent with the nature of the relationship between the parties as set out in the remainder of the lease. For example, the lease explained

7

that AMLI was leasing the Demised Premises to Peli Peli "AS IS," with Peli Peli "accepting all defects, if any" and with AMLI making "no warranty of any kind, express or implied." Similarly, regarding the Demised Premises and the larger Project, the lease explained that AMLI made "no warranty of any kind, express or implied, as to the habitability, fitness, or suitability" of the property "generally or for a particular purpose."

In its brief, Peli Peli argues that the as-is clause found in the lease, which also included the first warranty disclaimer listed above, did not apply to the chase provision and, therefore, could not have excused AMLI's duty to deliver a chase containing a functioning grease-duct system. As support for this argument, Peli Peli highlights that the as-is clause pertains to the Demised Premises, and Peli Peli argues that the chase is not part of the Demised Premises as defined in the lease and instead went through portions of the building that were not leased or occupied by Peli Peli.[2] Further, Peli Peli argues that if AMLI intended for the as-is clause to apply to the grease-duct system, it would have included that system in the as-is clause and also suggests that applying that as-is clause to the chase provision would render the chase provision meaningless because it would allow AMLI to deliver an exhaust system that did not work. Regarding the second warranty disclaimer, Peli Peli acknowledges that the warranty disclaimer also referenced the Project and that the larger Project likely included the chase but contends that the warranty disclaimer does not apply because Peli Peli sued for breach of contract and not for breach of any warranty.

---

[2] As support for these arguments, Peli Peli refers to the testimony of various witnesses describing the meaning of the terms in the lease and the intent of the parties when entering the lease. However, since the terms of the lease are not ambiguous, we do not consider extrinsic evidence for the purpose of ascertaining the meaning of the terms at issue. *See Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015).

8

Even assuming the as-is and warranty disclaimer clauses do not apply to the chase provision, those clauses are still instructive for determining the nature of the agreement between the parties. Moreover, as set out above, the lease essentially included an as-is clause regarding the chase by requiring AMLI to deliver the "existing" chase, meaning the one that was already in place, without requiring any alteration.

The construction set out above is also consistent with the provisions setting out Peli Peli's obligations under the lease. For example, the lease provided that Peli Peli was obligated to "repair and replace[] . . . all utility repairs in ducts, conduits, pipes, and wiring . . . which exclusively serve the Demised Premises, regardless of when or how the defect or other cause for repair or replacement occurred or became apparent." Similarly, the portion of the lease discussing utilities stated that Peli Peli was "responsible for the installation, maintenance, repair and replacement of [its] air conditioning, heating and ventilation systems." Further, when discussing Peli Peli's use of a vent hood, the lease explained that Peli Peli was obligated to "install metal receptacles on the roof around the vent hood to catch any dripping grease being discharged from the vent" and made Peli Peli "liable . . . for any damage and costs related" to grease build up on the roof.

For these reasons, we conclude that the lease provision requiring AMLI to provide the "existing exhaust chase for venting" is not ambiguous, obligated AMLI to deliver the chase in the state it existed when the agreement was executed, and did not obligate AMLI to deliver a functional grease-duct system. Accordingly, we conclude that the trial court erred by determining that the lease was ambiguous and relying on extrinsic evidence when construing the lease in favor of Peli Peli and, therefore, sustain AMLI's issue on appeal.

9

**CONCLUSION**

Having sustained AMLI's issue on appeal, we reverse the portion of the trial court's judgment ruling in favor of Peli Peli on its breach of the lease claim and render judgment that Peli Peli take nothing.[3] *See* Tex. R. App. P. 43.2, .3.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Smith

Reversed and Rendered

Filed:   March 11, 2022

---

[3] As mentioned above, the trial court found in favor of Peli Peli for breach of the lease, denying relief as to Peli Peli's other claims and as to AMLI's counterclaim.   Other than AMLI's appellate issue regarding Peli Peli's breach claim, the parties have presented no other challenge to the trial court's judgment.   Accordingly, we do not disturb the remaining portions of the trial court's judgment.