# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00116-CV

**AutoLotto, Inc., Appellant**

**v.**

**Paychex, Inc., Appellee**

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-003666, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

AutoLotto appeals from the trial court's orders (1) denying its motion for stay pending arbitral proceeding; and (2) granting final summary judgment on Paychex's breach-of-contract claim. We hold that the trial court correctly found that the parties entered into the underlying contract, the Paychex Flex Pro Services Agreement. And although AutoLotto filed suit to recover "monies due and owing," and the underlying contract carved out actions for "monies due and owing" from the arbitration requirement, we are bound by *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694 (Tex. 2023), to hold that the parties agreed to delegate to an arbitrator the question of whether the dispute falls within the carve-out. Accordingly, we reverse the trial court's judgment and remand the cause to the trial court with instructions to render an order compelling the parties to arbitrate the arbitrability of their dispute.

BACKGROUND

**The Paychex Flex Pro Services Agreement**

On January 8, 2018, AutoLotto purportedly contracted with Paychex, a payroll services company, to handle AutoLotto's payroll. In the first two pages of the Paychex Flex Pro Services Agreement, which doubled as a credit application, AutoLotto's Vice President of Finance, Raffy J. Ohannesian, represented that he had the authority to bind AutoLotto to the 13-page Paychex Flex Enterprise Services Agreement by signing the Paychex Flex Pro Services Agreement on the second page. Pages 3, 4, and 5 of the Paychex Flex Enterprise Services Agreement set out terms and conditions for Reimbursement Amounts Due, Client's Default, and Governing Law and Arbitration as follows:

¶ **7.a. Reimbursement Amounts.** Client agrees to remit funds to Paychex representing the amount due to pay Client's employees, remit taxes, pay garnishments, or otherwise fund Client's payroll or payment obligations ("Reimbursement Amounts") through an EFT, or such other payment method as required by Paychex.

¶ **9. Client's Default.** In the event of a Client default, Paychex may, at its sole option, terminate the Agreement or a portion thereof, without notice and declare all Amounts Due immediately due and payable. Client agrees to promptly reimburse Paychex for all advances or overpayments made by Paychex and to pay interest on the advances at the rate of one and one-half percent (1½%) per month, or the maximum allowable by applicable law, until paid. Client agrees that Paychex may initiate an EFT to Client's bank account for any past due Amounts Due. Client will be responsible for the costs of collection of Amounts Due including, but not limited to, attorneys' fees and court costs. Paychex may, in its sole discretion, commence an action within the County of Monroe, State of New York, or in any other court of competent jurisdiction for any monies due and owing from Client to Paychex.

¶ **17. Governing Law and Arbitration.** The Agreement and all aspects of the relationship between Paychex and Client shall be governed exclusively by the laws of the State of New York without regard to, or application of, its conflict of laws, rules, and principles, except for the arbitration agreement contained herein which shall be governed exclusively by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (the "FAA"). Except as provided herein, any dispute arising out of, or in connection with, the Agreement will be determined only by binding arbitration in Rochester, New York, in accordance with the commercial

rules of the American Arbitration Association. Arbitrable disputes include, without limitation, disputes about the formation, interpretation, applicability, or enforceability of this Agreement [].

**AutoLotto's Default**

According to its summary-judgment evidence, Paychex received a request from AutoLotto, dated July 2, 2022, to process payroll in the amount of $235,999.22 for the pay period of June 20, 2022, through July 3, 2022, with a check date of July 8, 2022. Paychex processed the request and funded the payroll. Paychex submitted an electronic funds transfer (EFT) to AutoLotto's bank account in the amount of $235,999.22 on July 8, 2022, for the payroll funded by Paychex, but AutoLotto's bank notified Paychex that AutoLotto had insufficient funds in its account to satisfy the EFT. Paychex contacted AutoLotto regarding the insufficient funds notification from the bank and the outstanding balance of $235,999.22, but AutoLotto did not pay the balance due and owing. And, after all lawful offsets, payments and credits, there remains a balance due of at least $238,849.46.

**The Lawsuit**

Paychex filed suit alleging, among other causes, breach of contract/sworn account. It thereafter filed a motion for summary judgment on the breach-of-contract claim attaching the following documents: (a) Paychex Flex Pro Services Agreement [first two pages of what it later asserted to be the overall agreement]; (b) Cash Requirements request dated July 8, 2022; (c) [Attorney's Fees] Affidavit of Rhonda J. Bennetsen counsel for [Paychex]; and (d) Affidavit of Janine Finochio, Authorized Representative of [Paychex], attesting to the elements of the breach of contract.

3

In its first amended answer, AutoLotto asserted a Rule 92 general denial and a Rule 93 verified plea denying the execution of the services agreement. Tex. R. Civ. P. 92, 93(7). In its response to Paychex's motion for summary judgment, AutoLotto pointed out Paychex's failure to attach the terms and conditions of the agreement, stated Paychex had failed to show how AutoLotto had benefited from Paychex's services, and raised the defense of lack of authority, asserting that Ohannesian never had authority to bind AutoLotto to the Services Agreement. It attached a declaration from its outside general counsel to that effect.

In its reply, Paychex objected to the declaration of outside counsel as hearsay, conclusory, and unsupported by any evidence. It also argued that AutoLotto had not provided any competent evidence to dispute that it had conclusively established a breach of contract. It again included the first two pages of the Pro Services Agreement, and, for the first time, attached an unsigned copy of the full thirteen-page Enterprise Services Agreement. As described above, in addition to two pages at the beginning that are very similar to the signed Pro Service Agreement, that thirteen-page Enterprise Services Agreement contained the Client's Default clause, Paragraph 9, and the Governing Law and Arbitration clause, Paragraph 17. Paychex represented to the court that these fifteen pages together are "a true and correct copy of the complete Paychex Flex Pro Services Agreement." Paychex asserted for the first time that it had "provided in excess of Thirteen Million Dollars since the inception of the Agreement in 2018, with both parties performing until [AutoLotto] failed to pay for the last payroll," and "[a]t no time in over five (5) years has [AutoLotto] ever questioned the authority of Raffy J. Ohannesian to bind the company for the services [Paychex] has provided."

After Paychex produced with its reply the fifteen-page document it contended was the complete agreement between the parties, AutoLotto moved to stay or dismiss the case based

4

on the arbitration clause contained in that agreement. The motion asked the trial court to (1) stay the case for an arbitrator's determination of arbitrability; (2) consider arbitrability and dismiss the case because all issues raised must be submitted to arbitration; or (3) consider arbitrability and grant a mandatory stay so Paychex's claim could be decided in arbitration. It argued that the commercial rules of the American Arbitration Association [AAA], referred to in the clause, require that an arbitrator determine arbitrability and the merits (if the arbitrator determined that it would arbitrate the dispute). Paychex responded; it asserted AutoLotto had not actually raised an issue about the "formation, interpretation, applicability, or enforceability" of the Services Agreement, as would trigger the arbitration clause, and pointed out that AutoLotto "states in its Motion that it 'does not dispute that a valid contract existed between the parties.'"[1] According to Paychex, the only dispute is regarding the $238,849.46 default, so Paragraph 9, which allows it to commence suit in any competent jurisdiction upon a client's default, controls.

On January 17, 2024, the trial court held a hearing on both motions. At the hearing, Paychex again noted that it has funded over $13 million worth of payrolls, "so the apparent authority argument, it just doesn't have any weight in this[.]" AutoLotto, still maintaining that summary judgment was improper because Ohannesian lacked authority to bind it, did not fault Paychex for its late filing of the full agreement, but argued in support of its motion to stay or dismiss the proceedings for arbitration that, under Paragraph 17, the case had to go to an arbitrator to determine arbitrability because Paychex was suing for the Service Agreement's "enforcement."

---

[1] In fact, AutoLotto in its motion described Paychex's allegations: "4. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment, p. 1, alleges: More importantly, Defendant does not dispute that a valid contract existed between the parties."

The trial court initially stated that the case would go to arbitration, but then after hearing Paychex's argument on Paragraph 9, changed course and said it would rule for Paychex.

On January 18, 2024, the trial court signed (1) an Order Denying Stay Pending Arbitral Proceeding, finding as a matter of law that Paragraph 9 (Client's Default) of the Agreement controls over Paragraph 17 (Governing Law and Arbitration) of the Agreement; and (2) a Final Summary Judgment on Paychex's breach of contract claim, finding no genuine issue of any material fact. In the final judgment, the trial court ordered that Paychex recover $238,849.46 against AutoLotto, plus prejudgment and postjudgment interest; $3,380.00 in attorney's fees; and costs of the suit.

AutoLotto appeals both the Order Denying Stay Pending Arbitral Proceeding and the Final Summary Judgment.

**ANALYSIS**

This appeal presents the anomalous situation where the party suing on the contract containing an arbitration clause (Paychex) resisted arbitration, and the defendant (AutoLotto) denies the existence of the contract, but nevertheless moved to compel it.

Without expressly challenging the trial court's implicit ruling that a contract exists, AutoLotto acknowledges the existence of an agreement to arbitrate and argues the trial court erred in (1) deciding arbitrability; (2) failing to determine that the merits must be resolved through arbitration; and (3) granting AutoLotto's motion for summary judgment. But before we can address AutoLotto's first issue, we must address the antecedent issue of whether the trial court correctly decided that the contract containing the arbitration clause "came into being" in the first place. *See Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 586 (Tex. 2022) (explaining

6

that under FAA "a party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement" and that challenges to contract's existence are decided by trial court).  For if the parties never agreed to anything, they did not agree to arbitrate.

**Because arbitration is a matter of contract, courts must decide in the first instance whether a valid arbitration agreement exists.**

The Texas Supreme Court has recognized that an argument that the contract does not exist cannot logically be resolved by the arbitrator; formation defenses go to the very existence of an agreement to arbitrate and, as such, are matters for the court, not the arbitrator.  *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 189 (Tex. 2009) (orig. proceeding) (distinguishing illegality defenses, raising issue of contract's validity, which can be reserved for arbitrator).

Here, AutoLotto, the party seeking arbitration, argued in opposition to summary judgment that Ohannesian, who signed the agreement on its behalf, lacked authority to do so. It denied execution of the contract in its verified denial.  AutoLotto's outside counsel, in his declaration, stated he had (1) reviewed AutoLotto's governing documents and found those documents neither delegate to Ohannesian the authority to appear on its behalf nor ratify or approve of the contract signed by him; and (2) learned from former higher-level officers of the Company that Ohannesian was not authorized to sign contracts.

Paychex objected to the declaration as insufficient to raise a genuine issue of material fact to defeat its motion for summary judgment because it was conclusory.  We agree. "Conclusory statements in affidavits are not sufficient to raise fact issues because they are not credible or susceptible to being readily controverted.  *La China v. Woodlands Operating Co.*, 417 S.W.3d 516, 520 (Tex. App.–Houston [14th Dist.] 2013, no pet.) (citing *Ryland Group, Inc. v.*

7

*Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam)). "Paychex argues that "(1) [Outside counsel's] testimony was conclusory; (2) [Outside counsel] failed to attach sworn or certified copies of the papers he relies on and discusses in his affidavit in violation of Rule 166a(f) of the Texas Rules of Civil Procedure; and, (3) [Outside counsel's] affidavit is based entirely on hearsay." Even if the declaration were not (1) conclusory, (2) lacking documents referred to in the affidavit, and (3) based on hearsay, it did nothing to raise a fact issue or genuine dispute on apparent authority. Under Texas law, apparent authority is established through the principal's conduct that leads a third party to reasonably believe an agent has authority to act on the principal's behalf. *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). Outside counsel's affidavit does not address Paychex's evidence supporting that the principal's conduct (in requesting Paychex fund its payroll in the amount of $235,999.22, for the pay period of June 20, 2022 through July 3, 2022, with a check issue date of July 8, 2022, and in accepting that funding) would lead the third party (Paychex) to reasonably believe the agent (Ohannesian) had authority to act for the principal (AutoLotto) and that the parties were continuing to operate under the agreement signed by Ohannesian in 2018. Nor does it address Paychex's factual assertion that it has provided in excess of $13 million since the inception of the Agreement in 2018, with both parties performing until AutoLotto failed to pay for the last payroll. *See Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 819 (Tex. 2021) (noting party cannot rely on its own pleaded allegations as evidence of facts to support its summary-judgment motion, but "even in the summary-judgment context, pleadings 'outline the issues,' and courts may grant summary judgment based on deficiencies in an opposing party's pleadings"). We conclude that AutoLotto's summary-judgment evidence did not raise a fact issue on the element of the existence of a contract between the parties. That agreement contains a valid arbitration agreement, and we therefore

8

turn to AutoLotto's first appellate argument—that the trial court erred in deciding arbitrability—and, finding for AutoLotto, stop there.  *See*, *e.g.*, *Hart of Tex. Cattle Feeders, LLC v. Bonsmara Nat. Beef Co., LLC*, 583 S.W.3d 705, 707 (Tex. App.—Amarillo 2019), *aff'd*, 603 S.W.3d 385 (Tex. 2020).

**Who (the court or the arbitrator) decides whether the merits must be resolved through arbitration instead of in the courts?**

A party seeking to compel arbitration must establish that (1) there is a valid arbitration clause, and (2) the claims in dispute fall within that agreement's scope.  *Cerna ex rel. R.W. v. Pearland Urban Air, LLC*, 714 S.W.3d 585, 588 (Tex. 2025).  As discussed above, courts decide the first inquiry—whether a valid agreement to arbitrate exists.  *Id*.  And, unless the parties "clearly and unmistakably" provide otherwise, courts decide the second inquiry—whether the claims in dispute fall within that agreement's scope—too.  *TotalEnergies*, 667 S.W.3d at 702; *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018).  "But because arbitration agreements are contracts, the parties can agree that an arbitrator must decide whether the parties' claims fall within the agreement—or 'are arbitrable.'"  *Cerna*, 714 S.W.3d at 589-90.  "If the parties have contractually agreed to delegate arbitrability disputes to the arbitrator, courts must enforce that agreement just as they must enforce an agreement to delegate resolution of the underlying merits to the arbitrator."  *TotalEnergies*, 667 S.W.3d at 702  "If, on the other hand, the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).  When an appeal from a denial of a motion to compel arbitration turns on a

9

legal determination, as here, we apply a de novo standard. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 & n.9 (Tex. 2008).

Here, neither party disputes the existence of an agreement to arbitrate. AutoLotto argued that it "has established that 'a valid arbitration agreement exists' for purposes of staying the litigation pending arbitration. Therefore, any doubts about the scope of Paychex's agreement are resolved in favor of arbitration." And Paychex acknowledges the validity of the arbitration agreement by setting out language from Paragraphs 9 and 17 and stating, "As the contract makes clear, the parties did not intend for every dispute to be resolved through arbitration." The parties' disagreement is over whether Paychex's claim falls within that agreement's scope.

AutoLotto argues that the agreement to arbitrate under the AAA commercial rules gave the arbitrator the power to determine whether the parties' disputes must be resolved through arbitration. As alluded to above, in *TotalEnergies*, the supreme court adopted the general rule that an agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration. 667 S.W.3d at 708.

Paychex responds that arbitrability is for the court to decide, not the arbitrator, because the parties did not "clearly and unmistakably" provide otherwise. *See First Options,* 514 U.S. at 944. Rather, Paychex argues that Paragraph 9 ("Paychex may, in its sole discretion, commence an action . . . in any [] court of competent jurisdiction for any monies due and owing from Client to Paychex") and Paragraph 17 ("Except as provided herein, any dispute arising out of, or in connection with, the Agreement will be determined only by binding arbitration . . . in accordance with the commercial rules of the [AAA]"), when read together, establish that the parties

agreed that Paychex had the option to either file a lawsuit or arbitrate to recover the money owed by AutoLotto, thus reserving arbitrability for the court, just as the trial court independently found.

We agree with Paychex that the language in Paragraphs 9 and 17 gives Paychex two options in the event of a client default—commencing an action in court or seeking redress through arbitration. We also agree that, given the carve out for a client's default, the power to decide whether Paychex's claim was arbitrable would traditionally have belonged to the court. *See Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 24 (Tex. 2014) (when arbitration agreement incorporates by reference outside rules, specific provisions in arbitration agreement take precedence and arbitration rules are incorporated only to extent that they do not conflict with express provisions of arbitration agreement); *see also TotalEnergies*, 667 S.W.3d at 708 & n.19 (recognizing most courts of appeals have held that parties' incorporation of AAA or similar rules clearly and unmistakably delegates arbitrability to arbitrator only when arbitration agreement applies broadly to all possible claims between parties without carving out any claims).

But in *TotalEnergies*, the supreme court broke with those prior decisions and agreed with the "vast majority of courts" (nearly every federal circuit and ten of the fifteen state supreme courts that have weighed in on the issue) holding that when parties select the AAA rules, they "clearly and unmistakably" delegate to the arbitrator the question of whether the dispute falls within the carve-out. 667 S.W.3d at 708 & n.11, n.12. The supreme court explained that where the clause expressly states that arbitration must be conducted "in accordance with the rules of the AAA," and that the "procedure of the arbitration proceedings shall be in accordance with the Commercial Rules of the AAA," the AAA rules are "part of" the parties' agreement as if they were set forth within the agreement itself. *Id*. at 709. "The AAA rules, in turn, provide that the arbitrator 'shall have the power to rule on his or her own jurisdiction, including any objections with respect

11

to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'" *Id*. (citing Am. Arb. Ass'n. R-7(a) (2013)).[2]

The supreme court—again relying on logic articulated in numerous state and federal courts, as well as the United States Supreme Court—held that the general rule applies even where the parties did not broadly agree to arbitrate all controversies but instead agreed to arbitrate only certain controversies and carve out others. *Id*. at 712-17, 19. The courts across jurisdictions reasoned that holding the opposite would conflate the two separate and distinct questions of (1) who decides what claims are arbitrable with (2) what claims are arbitrable. *Id*.

In reaching this conclusion, the Texas Supreme Court relied on *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019). Although the *Henry Schein* court did not express a view about whether the contract at issue in that case in fact delegated the arbitrability question to an arbitrator, it nevertheless rejected the Fifth Circuit's rule that a court rather than an arbitrator should decide the threshold arbitrability question if, under the contract, the argument for arbitration is wholly groundless. *Id*. at 68, 71-72.

> [Plaintiff] says that, as a practical and policy matter, it would be a waste of the parties' time and money to send the arbitrability question to an arbitrator if the argument for arbitration

---

[2] The current rule contains the same language with a phrase (here italicized) added. *See* Am. Arb. Ass'n. R-7(a) (2022) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, *without any need to refer such matters first to a court*."). The supreme court did not engage with this new language because MP Gulf had demanded arbitration before September 1, 2022. *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694 (Tex. 2023) (citing Am. Arb. Ass'n. Rule 1(a) (providing that rules apply in form in effect at time of demand for arbitration)). Because the language the supreme court interpreted is repeated verbatim in the 2022 rule, and the supreme court noted it was joining most federal circuit courts and other state supreme courts that have interpreted that language, we are bound by its interpretation. *Id*. at 711; *see Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (vertical stare decisis rule is inherent in structure of hierarchical system of courts).

12

is wholly groundless. In cases like this, as [Plaintiff] sees it, the arbitrator will inevitably conclude that the dispute is not arbitrable and then send the case back to the district court. So why waste the time and money? The short answer is that the Act contains no 'wholly groundless' exception, and we may not engraft our own exceptions onto the statutory text.

*Id*. at 70.

Although Paychex's claim is a "monies due and owing" one that appears to fit into the carve-out provision for actions after a client default, we are obligated to conclude that the arbitration agreement clearly and unmistakably requires the arbitrator to decide whether the present dispute must be resolved through arbitration. *TotalEnergies*, 667 S.W.3d at 719. As pointed out by the dissenter in that case, "Like glitter, the AAA rules cannot be constrained if the parties use them to any extent." *Id*. at 726 (Busby, J., dissenting).

## CONCLUSION

We sustain AutoLotto's first issue on appeal and conclude that the trial court erred by denying its motion to compel arbitration. Accordingly, we reverse the trial court's judgment and remand the cause to the trial court with instructions to render an order compelling the parties to arbitrate the arbitrability of their dispute.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Reversed and Remanded

Filed: January 16, 2026

13